**No. 2026-1861**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MINORITY VETERANS OF AMERICA,

*Petitioner*,

*v.*

SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

Petition for review pursuant to 38 U.S.C. Section 502.

## BRIEF FOR AMICI CURIAE MEMBERS OF CONGRESS IN SUPPORT OF PETITIONER AND REVERSAL

EMMA ELLMAN-GOLAN
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

BRIAN M. BOYNTON
KELSEY MOVSOWITZ
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

*Attorneys for Amici Curiae Members of Congress*

November 6, 2026

## CERTIFICATE OF INTEREST

Counsel for *Amici Curiae* certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

See attached list.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

5. **Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☒ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

6. **Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: November 6, 2026

/s/ Brian M. Boynton
BRIAN M. BOYNTON
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

## LIST OF REPRESENTED ENTITIES

*AMICI CURIAE*

### MEMBERS OF THE UNITED STATES SENATE

Richard Blumenthal (CT)
Patty Murray (WA)
Chuck Schumer (NY)
John Hickenlooper (CO)
Jack Reed (RI)
Jeanne Shaheen (NH)
Cory Booker (NJ)
Ed Markey (MA)
Elizabeth Warren (MA)
Brian Schatz (HI)
Ron Wyden (OR)
Ruben Gallego (AZ)
Jeff Merkley (OR)
Tammy Baldwin (WI)
Jacky Rosen (NV)
Sheldon Whitehouse (RI)
Elissa Slotkin (MI)
Chris Van Hollen (MD)
Amy Klobuchar (MN)
Andy Kim (NJ)
Tina Smith (MN)
Adam Schiff (CA)
Lisa Blunt Rochester (DE)
Angus King (ME)

Mazie Hirono (HI)
Michael Bennet (CO)
Tim Kaine (VA)
Chris Coons (DE)
Catherine Cortez Masto (NV)
Maggie Hassan (NH)
Bernie Sanders (VT)
Kirsten Gillibrand (NY)
Gary Peters (MI)
Tammy Duckworth (IL)
Mark Warner (VA)
Martin Heinrich (NM)
Ben Ray Luján (NM)
Jon Ossoff (GA)
Peter Welch (VT)
Angela Alsobrooks (MD)
Maria Cantwell (WA)
John Fetterman (PA)
Alex Padilla (CA)
Mark Kelly (AZ)
Raphael Warnock (GA)
Dick Durbin (IL)
Chris Murphy (CT)

### MEMBERS OF THE UNITED STATES HOUSE OF REPRESENTATIVES

Mark Takano (CA)
Teresa Leger Fernández (NM)
Diana DeGette (CO)
Ayanna Pressley (MA)
Frederica S. Wilson (FL)
Lloyd Doggett (TX)
Nancy Pelosi (CA)

Jasmine Crockett (TX)
Yassamin Ansari (AZ)
Sydney Kamlager-Dove (CA)
Dave Min (CA)
Delia C. Ramirez (IL)
Andrea Salinas (OR)
Joyce Beatty (OH)

Emanuel Cleaver II (MO)
James P. McGovern (MA)
Bonnie Watson Coleman (NJ)
James Walkinshaw (VA)
Maxine Waters (CA)
Julia Brownley (CA)
Stephen F. Lynch (MA)
Greg Stanton (AZ)
Eleanor Holmes Norton (DC)
Jill N. Tokuda (HI)
Ro Khanna (CA)
Maxine Dexter (OR)
Julie Johnson (TX)
Melanie A. Stansbury (NM)
Shri Thanedar (MI)
Herbert C. Conaway Jr. (NJ)
Dan Goldman (NY)
Nikki Budzinski (IL)
Analilia Mejia (NJ)
Rashida Tlaib (MI)
André Carson (IN)
Norma J. Torres (CA)
Jennifer L. McClellan (VA)
Raja Krishnamoorthi (IL)
Sarah Elfreth (MD)
Steven Horsford (NV)
Jonathan L. Jackson (IL)
Bill Foster (IL)
Mike Quigley (IL)
Bennie G. Thompson (MS)
Dina Titus (NV)
Marilyn Strickland (WA)
Kelly Morrison (MN)
Danny K. Davis (IL)
John W. Mannion (NY)
Adriano Espaillat (NY)
Sylvia R. Garcia (TX)
Valerie P. Foushee (NC)
Ritchie Torres (NY)
Wesley Bell (MO)

Sarah McBride (DE)
Salud O. Carbajal (CA)
Terri A. Sewell (AL)
Rosa L. DeLauro (CT)
Glenn Ivey (MD)
Angie Craig (MN)
Sara Jacobs (CA)
Gilbert Ray Cisneros Jr. (CA)
Yvette D. Clarke (NY)
Eric Sorensen (IL)
Ted W. Lieu (CA)
Troy A. Carter Sr. (LA)
Joseph D. Morelle (NY)
LaMonica McIver (NJ)
Nellie Pou (NJ)
Suzanne Bonamici (OR)
Chellie Pingree (ME)
Joe Courtney (CT)
Lauren Underwood (IL)
Pete Aguilar (CA)
Kathy Castor (FL)
Mary Gay Scanlon (PA)
Veronica Escobar (TX)
Emily Randall (WA)
Everton Blair Jr. (GA)
Timothy M. Kennedy (NY)
George Latimer (NY)
Jake Auchincloss (MA)
Al Green (TX)
Gabe Amo (RI)
Deborah K. Ross (NC)
Eugene Vindman (VA)
Haley M. Stevens (MI)
Mike Levin (CA)
Doris Matsui (CA)
Ami Bera, M.D. (CA)
Becca Balint (VT)
Lizzie Fletcher (TX)
Debbie Wasserman Schultz (FL)
Sharice Davids (KS)

Kevin Mullin (CA)
Greg Landsman (OH)
Jason Crow (CO)
Judy Chu (CA)
Lateefah Simon (CA)
Brad Sherman (CA)
Madeleine Dean (PA)
Jesús G. "Chuy" García (IL)
Grace Meng (NY)
Steve Cohen (TN)
William Keating (MA)
Chrissy Houlahan (PA)
Jared Huffman (CA)
Lori Trahan (MA)
Nanette Diaz Barragán (CA)
Adelita Grijalva (AZ)
Shontel M. Brown (OH)
Jan Schakowsky (IL)
Pramila Jayapal (WA)
Brittany Pettersen (CO)
Jerrold Nadler (NY)
Zoe Lofgren (CA)
Luz M. Rivas (CA)
Adam Smith (WA)
Scott H. Peters (CA)
Jamie Raskin (MD)
Kim Schrier, M.D. (WA)
Nydia M. Velázquez (NY)
Christian D. Menefee (TX)
Paul D. Tonko (NY)
Seth Magaziner (RI)
Suzan K. DelBene (WA)
Johnny Olszewski Jr. (MD)
Robin L. Kelly (IL)
Robert J. Menendez (NJ)
John Garamendi (CA)

Gwen S. Moore (WI)
Greg Casar (TX)
Nikema Williams (GA)
Laura Friedman (CA)
Maggie Goodlander (NH)
Mark Pocan (WI)
Maxwell Alejandro Frost (FL)
Chris Deluzio (PA)
Chris Pappas (NH)
Suhas Subramanyam (VA)
Gabe Vasquez (NM)
Morgan McGarvey (KY)
Joaquin Castro (TX)
Ed Case (HI)
Janelle S. Bynum (OR)
Josh Gottheimer (NJ)
Frank Pallone Jr. (NJ)
J. Luis Correa (CA)
April McClain Delaney (MD)
Summer L. Lee (PA)
Jared F. Golden (ME)
Debbie Dingell (MI)
Sam T. Liccardo (CA)
Seth Moulton (MA)
Richard E. Neal (MA)
Bradley Scott Schneider (IL)
Donald S. Beyer Jr. (VA)
Sean Casten (IL)
Rick Larsen (WA)
Jimmy Panetta (CA)
Alexandria Ocasio-Cortez (NY)
Juan Vargas (CA)
Robert C. "Bobby" Scott (VA)
Mark DeSaulnier (CA)
Kweisi Mfume (MD)

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ vii

INTEREST OF *AMICI CURIAE* ........ 1

SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 5

I. SECTION 106 DOES NOT LIMIT MEDICAL CARE FOR VETERANS PROVIDED UNDER 38 U.S.C. § 1710 ........ 5

A. By Its Terms, Section 106 Restricts Only Care Furnished Under That Provision ........ 6

B. In 1996, Congress Replaced the Prior Patchwork of Care with a Comprehensive Medical Benefits Package ........ 8

II. SUBSEQUENT ACTIONS BY VA AND CONGRESS CONFIRM THAT SECTION 106 DOES NOT CONSTRAIN VA'S PROVISION OF HEALTHCARE UNDER 38 U.S.C. § 1710 ........ 12

A. VA Implemented the VHCERA With the Understanding That Section 106 Did Not Govern the Medical Benefits Package ........ 12

B. VA Has Repeatedly Reiterated That Section 106 Does Not Bear on the Medical Benefits Package ........ 14

C. Congress Has Continued to Legislate Within the Medical Benefits Package Framework, Not Section 106 ........ 16

III. SECTION 106 DOES NOT ADDRESS OR LIMIT ABORTION COUNSELING ........ 17

CONCLUSION ........ 18

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) ................14

*National Association of Manufacturers v. Department of Defense*, 583 U.S. 109 (2018).......................................................................................8

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .........................................................8

*United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007) ...............................8

## STATUTES, RULES, AND REGULATIONS

38 C.F.R. § 17.38(a)...........................................................................................12

38 C.F.R. § 17.38(b) ...................................................................................3, 9, 13

38 C.F.R. § 17.38(c)(1) (1999) ..............................................................................13

64 Fed. Reg. 54207 (Oct. 6, 1999) ........................................................................13

87 Fed. Reg. 55287 (Sept. 9, 2022) (codified at 38 C.F.R. pt. 17)..........................15

89 Fed. Reg. 15451 (Mar. 4, 2024).........................................................................15

90 Fed. Reg. 61310 (Dec. 31, 2025)..........................................................1, 5, 8, 18

10 U.S.C. § 1093 ....................................................................................................10

38 U.S.C. § 1710 .................................. 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 15, 16, 17, 18

38 U.S.C. § 1786 ....................................................................................................17

38 U.S.C. ch. 17 ...........................................................................3, 6, 7, 8, 12, 16

Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, div. B, §§ 506-507, 140 Stat. 237 (2026)...................................................................11

Fed. R. App. P. 29 ....................................................................................................1

Pub. L. No. 114-223, § 260, 130 Stat. 857 (2016)..................................................17

Pub. L. No. 116-315, § 5101(b)(2), 134 Stat. 4932 (2021) .....16

Pub. L. No. 117-69, 135 Stat. 1495 (2021).....17

Veterans Health Care Act of 1992, Pub. L. No. 102-585, 106 Stat. 4943 (1992) ..... 2, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 18

Veterans' Health Care Eligibility Reform Act of 1996, Pub. L. No. 104-262, 110 Stat. 3177 (1996)..... 2, 3, 4, 8, 9, 10, 11, 12, 18

## OTHER AUTHORITIES

142 Cong. Rec. H8770-71 (daily ed. July 31, 1996) (statement of Rep. Montgomery) .....10

142 Cong. Rec. S11656 (daily ed. Sept. 28, 1996) (statement of Sen. Rockefeller) .....10

Congressional Research Service, *Health Care for Veterans: Answers to Frequently Asked Questions* (Feb. 25, 2014), https://digital.library.unt.edu/ark:/67531/metadc282277/m1/1/high_res_d/R42747_2014Feb25.pdf .....13

Dep't of Veterans Affairs, Veterans Health Admin., *Health Care Services for Women Including General Reproductive Health Care for Women Veterans*, VHA Directive 10-93-151 (Dec. 6, 1993) (rescinded Dec. 29, 1994). .....3, 7

H.R. Rep. No. 104-690 (1996).....4, 9

H.R. Rep. No. 116-281 (2019).....17

House Comm. on Veterans Affs., *Department of Veterans Affairs Oversight: Abortion Services*, C-SPAN (Mar. 25, 2021), https://www.c-span.org/video/?c5023557/user-clip-abortion-services.....14

Joint Explanatory Statement on H.R. 5193, 138 Cong. Rec. S17890 (daily ed. Oct. 8, 1992), *as reprinted in* 1992 U.S.C.C.A.N. 4186, 4189-90 .....7

Kime, Patricia, *VA Considers Providing Abortions as It Monitors States' Responses to Supreme Court Ruling*, Military (July 21, 2022), https://www.military.com/daily-news/2022/07/21/va-considers-providing-abortions-it-monitors-states-responses-supreme-court-ruling.html .................................................................... 14-15

Letter from Senator Mazie K. Hirono et al., to Denis McDonough, Sec'y, Dep't of Veterans Affairs (July 28, 2022), https://www.hirono.senate.gov/imo/media/doc/07.28.2022_MKH_Letter%20to%20VA%20re_%20Abortion_Final.pdf ..............................15

U.S. Gov't Accountability Office, GAO/HEHS-96-160, VA Health Care: Opportunities to Enhance Eligibility Reform Efforts 43 (1996), https://www.gao.gov/assets/hehs-96-160.pdf .....................................9

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are 212 Members of the United States Senate and House of Representatives. Among them are Members who serve on the committees with jurisdiction over veterans' health care, who have legislated repeatedly with respect to the health care available to veterans through the Department of Veterans Affairs ("VA"), and who represent veterans across the country. *Amici* have an institutional interest in how the federal statutes governing veterans' health care are construed.

The 2025 VA Final Rule challenged in this case (90 Fed. Reg. 61310 (Dec. 31, 2025)) restricts veterans' access to critical reproductive care. The Rule rests on a deeply flawed legal premise—that Congress, in 1992, enacted a prohibition that reaches every aspect of VA's medical authority, including a grant of authority Congress would not provide for another four years. That premise is mistaken, and *amici* are well positioned to explain why. They know the problem Congress set out to solve in 1996, when it enacted a new authority governing the provision of health care to veterans and did not include the prohibition contained in the 1992 legislation. They know that Congress enacted legislation addressing veterans' reproductive and maternity care many times since, always through the framework it built in 1996 and

[1] Pursuant to Federal Rule of Appellate Procedure 29, *amici curiae* and their counsel represent that they have authored the entirety of this brief and that no person other than *amici curiae* or their counsel has made a monetary contribution to the preparation or submission of this brief.

never through the prior 1992 law—Section 106 of the Veterans Health Care Act of 1992, Pub. L. No. 102-585, 106 Stat. 4943 (1992) ("VHCA"). And they know that when Congress intends to restrict a federal agency's provision of particular care, it does so in express terms, as it has done for other agencies but has never done here.

*Amici* submit this brief in support of the Petitioner to explain why Section 106 of the Veterans Health Care Act of 1992 does not prohibit VA from providing abortion care or counseling under the separate authority Congress conferred through the Veterans' Health Care Eligibility Reform Act of 1996, Pub. L. No. 104-262, 110 Stat. 3177 (1996) ("VHCERA"), and 38 U.S.C. § 1710. A full list of *amici* can be found in the Certificate of Interest. Counsel for both the Petitioner and Respondent consent to the filing of this brief.

## SUMMARY OF ARGUMENT

Before 1996, the statutes governing veterans' health care comprised a patchwork of separate authorities, each addressing particular categories of veterans or particular forms of care. Section 106 of the VHCA of 1992 was one such provision. It authorized VA to furnish specified reproductive-health services to certain veterans, while providing that "infertility services, abortions, or pregnancy care" could not be furnished "*under this section*." Pub. L. No. 102-585, § 106, 106 Stat. 4943, 4947 (emphasis added). By its terms, Section 106 restricted only the care furnished under the authority that Section 106 itself conferred. It did not purport to

limit the Secretary's separate authority to furnish medical care under 38 U.S.C. § 1710 or elsewhere in Chapter 17 of Title 38, which governs VA's provision of hospital care and medical services.

Four years later, Congress replaced that fragmented system with a comprehensive framework for the provision of care. The VHCERA directed the Secretary to furnish the hospital care and medical services that the Secretary "determines to be needed" and authorized VA to define those services through a uniform Medical Benefits Package. 38 U.S.C. § 1710; 38 C.F.R. § 17.38(b). From that point forward, the services available to enrolled veterans were determined under the VHCERA and the Medical Benefits Package, not under Section 106's limited grant of authority.

The agency charged with administering these statutes has consistently read them this way. As early as 1993, VA's General Counsel advised that Section 106's exclusions "do not constitute a ban on the Secretary's authority to provide infertility or abortion services as otherwise authorized under … Chapter 17." Dep't of Veterans Affairs, Veterans Health Admin., *Health Care Services for Women Including General Reproductive Health Care for Women Veterans*, VHA Directive 10-93-151 (Dec. 6, 1993) (rescinded Dec. 29, 1994). VA then acted on that plain reading of the statute for three decades. In a 1999 rulemaking, VA invoked its authority under 38 U.S.C. § 1710 to include pregnancy, delivery, and infertility

services in the Medical Benefits Package, notwithstanding Section 106's exclusion of those services from care furnished "under" Section 106. VA likewise treated the exclusion of abortion care and counseling from the Medical Benefits Package as a regulatory policy choice, not as a command imposed by Section 106. Those actions make sense only if Section 106's restrictions are confined to Section 106 itself.

Congress has repeatedly legislated against the backdrop of that settled interpretation. The VHCERA's legislative history confirms that Congress intended to replace the prior "complex array" of eligibility rules with a "single uniform eligibility standard," to authorize VA to provide care for "any health problem," and to eliminate statutory barriers to medically appropriate care. H.R. Rep. No. 104-690, at 4 (1996). Congress subsequently enacted additional legislation governing health care for women veterans by reference to the Medical Benefits Package, without suggesting that Section 106 constrained the Secretary's authority under Section 1710.

The 2025 Final Rule departs from that longstanding statutory understanding. It treats Section 106 as an atextual across-the-board restriction on services furnished under a different and later-enacted source of authority, and it identifies no statutory basis for the prohibition other than Section 106. Because the Final Rule rests on a statutory prohibition that Congress did not enact, the Court should hold it unlawful and set it aside.

## ARGUMENT

### I. SECTION 106 DOES NOT LIMIT MEDICAL CARE FOR VETERANS PROVIDED UNDER 38 U.S.C. § 1710

VA's Final Rule rests on a faulty interpretation of federal law that has significant negative consequences for our nation's veterans. The issues presented in this case potentially reach roughly 462,000 women veterans of reproductive age who are enrolled in VA health care, along with an estimated 112,000 women of reproductive age enrolled in the Civilian Health and Medical Program of the Department of Veterans Affairs ("CHAMPVA").[2] For them, the Final Rule means that a VA physician is prohibited from discussing the full range of a patient's options during a pregnancy, prohibited from providing the full range of health care available to pregnant women, and prohibited from intervening when a pregnancy threatens the patient's health or is the result of rape or incest.

VA claims it is constrained from authorizing the provision of abortion care and counseling to these veterans and their family members because Section 106 of the VHCA of 1992 purportedly forbids the agency from doing so. The Final Rule identifies Section 106 as its "primary legal basis," and it treats every discretionary rationale as subordinate to that supposed statutory command. 90 Fed. Reg. at 61311.

[2] These figures are drawn from data the Department of Veterans Affairs provided to the Senate Committee on Veterans' Affairs on February 3, 2025, in response to a request from Committee staff.

That position rests on a threshold error. Section 106 restricts only the care the Secretary furnishes *under Section 106.* It does not reach the separate authority Congress conferred in 38 U.S.C. § 1710, and it is not a freestanding limit on every source of authority available to VA. The statutory text, the structure Congress adopted in 1996, and three decades of VA's own practices foreclose VA's new contrary reading.

### A. By Its Terms, Section 106 Restricts Only Care Furnished Under That Provision

Before 1996, Congress authorized veterans' health care through a collection of provisions addressing particular categories of veterans or particular forms of care. Section 106 was one such provision. Enacted in 1992, it authorized VA in the course of "furnishing hospital care and medical services under chapter 17 of title 38" to "provide to women the following health care services": "pap smears," "[b]reast examinations and mammography," and "[g]eneral reproductive health care, including the management of menopause." Pub. L. No. 102-585, § 106(a), 106 Stat. 4943, 4947 (1992). It also specified that certain forms of medical care—"infertility services, abortions, or pregnancy care (including prenatal and delivery care), except for such care relating to a pregnancy that is complicated or in which the risks of complication are increased by a service-connected condition"—could not be provided "*under this section*." *Id.* § 106(a)(3) (emphasis added). That limiting phrase "under this section" confines the identified exclusions to the authority

conferred by Section 106; it does not extend them to care furnished under a separate statutory provision. Congress said as much when it enacted the provision, explaining that "[t]he inclusion of the phrase 'under this section' underscores the intent of the Committees not to limit such authority as the Secretary may have to provide any infertility services under Chapter 17." Joint Explanatory Statement on H.R. 5193, 138 Cong. Rec. S17890 (daily ed. Oct. 8, 1992), *as reprinted in* 1992 U.S.C.C.A.N. 4186, 4189-90. That same logic extends to abortion care: the phrase "under this section" underscored the intent of Congress not to limit the Secretary's authority to provide abortion services under Chapter 17.

VA adopted that straightforward interpretation of the plain text of Section 106 almost immediately. In 1993, VA's General Counsel explained that Section 106's exclusions "do not constitute a ban on the Secretary's authority to provide infertility or abortion services as otherwise authorized under 38 United States Code (U.S.C.) Chapter 17." Dep't of Veterans Affairs, Veterans Health Admin., *Health Care Services for Women Including General Reproductive Health Care for Women Veterans*, VHA Directive 10-93-151 (Dec. 6, 1993) (rescinded Dec. 29, 1994). VA thus recognized that Section 106 limited the care furnished under Section 106, but it did not constrain the provision of care under other authorities.

For purposes of the Final Rule, VA is now choosing to read this provision differently. Because Section 106(a) opens by addressing VA's furnishing of

"hospital care and medical services under chapter 17 of title 38, United States Code," VA treats the exclusions in Section 106(a)(3) as reaching every service the Secretary furnishes anywhere in Chapter 17. 90 Fed. Reg. at 61311. But that is not what Section 106 provides. It specifies that the exclusions govern care provided only under "this section"—Section 106. If the opening language already extended Section 106(a)(3)'s restrictions to any care provided by VA under any authority, the qualifier "under this section" would have been unnecessary and confusingly narrower. Courts generally avoid statutory interpretations that render statutory language surplusage. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128-29 (2018) (courts are "obliged to give effect, if possible, to every word Congress used" (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))); *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 137 (2007) (declining a reading that would render statutory text "a dead letter"). Here, Section 106's text is clear: the exclusions specified apply only to care provided under the authority of that section.

### B. In 1996, Congress Replaced the Prior Patchwork of Care with a Comprehensive Medical Benefits Package

In 1996, Congress fundamentally reorganized the legal framework governing veterans' health care. Rather than continue to define eligibility and services through a collection of discrete statutory authorities, the VHCERA directed the Secretary to develop a uniform mechanism for the provision of care and to provide the hospital care and medical services that the Secretary "determines to be needed" under that

program. Pub. L. No. 104-262, § 101(a), 110 Stat. 3177, 3178 (amending 38 U.S.C. § 1710). VA implemented that authority through the Medical Benefits Package, which covers care determined by health-care professionals to be "needed to promote, preserve, or restore the health of the individual." 38 C.F.R. § 17.38(b).

The VHCERA's legislative history confirms that Congress enacted the statute to replace the prior fragmentation that governed medical care for veterans. The House Report described the existing eligibility laws as "complex, confusing, and in some respects, inconsistent with sound medical practice." H.R. Rep. No. 104-690, at 2-3. It explained that the Act would replace that regime with "a single uniform eligibility standard," require VA "to provide needed hospital care for any health problem," and "eliminat[e] statutory barriers to providing care." *Id.* at 4-5.

For women veterans in particular, the prior fragmented eligibility system had produced arbitrary gaps in care. A GAO report requested by and provided to Congress shortly before enactment of the VHCERA explained that a veteran could receive "treatment for the complications of pregnancy, but [could] not obtain prenatal care or delivery services for a routine pregnancy through the VA." U.S. Gov't Accountability Office, GAO/HEHS-96-160, VA Health Care: Opportunities to Enhance Eligibility Reform Efforts 43 (1996), https://www.gao.gov/assets/hehs-96-160.pdf. That discontinuity exemplified the problem Congress addressed in the VHCERA: whether VA could furnish medical services turned on statutory authority

rather than whether the services were medically needed. Congress responded by creating a comprehensive framework under Section 1710—and did not incorporate into that framework every restriction attached to an earlier grant of authority.

Members of both Houses similarly described the legislation as remedying the problems of patchwork care. Representative Montgomery, one of the Act's cosponsors, explained that the VHCERA "would remedy these and other barriers to VA's providing medically needed care." 142 Cong. Rec. H8770-71 (daily ed. July 31, 1996) (statement of Rep. Montgomery). Senator Rockefeller, the then-ranking member of the Senate Committee on Veterans' Affairs and a key supporter of the legislation, likewise explained that the reformed eligibility system should "ensure that VA is able to furnish patients the most appropriate care and treatment that is medically needed." 142 Cong. Rec. S11656 (daily ed. Sept. 28, 1996) (statement of Sen. Rockefeller).

Congress did not intend—and indeed took no steps—to carry into the VHCERA the limitations on care that existed in the pre-1996 framework. When Congress does intend to restrict an agency's provision of care, especially abortion care, it does so explicitly. Congress has barred the Department of Defense from using its funds or facilities for abortions, subject to specified exceptions. 10 U.S.C. § 1093. It has attached a comparable restriction to the appropriations of the Departments of Labor, Health and Human Services, and Education, as well as the

Department of State, Foreign Operations, and Related Programs every year for more than five decades. These restrictions apply explicitly and solely to the activities funded in these bills. *See, e.g.*, Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, div. B, §§ 506-507, 140 Stat. 237 (2026). Each of those provisions states plainly what it governs. Section 106 similarly states plainly what it governs: a noticeably narrow category of care furnished "under this section."

Indeed, since 1996, the content of the generally available package of veterans' medical services has been determined under Section 1710 and the regulations implementing it. The restrictive language in Section 106(a)(3) is merely a limitation on care furnished under Section 106. It does not constrain the distinct authority to provide comprehensive care to veterans that Congress conferred through the VHCERA.

Respondent's reading of Section 106 would preserve the fragmentation that Congress sought to eliminate. It would import a restriction attached to one pre-VHCERA grant of authority into the comprehensive system Congress later created, even though Section 106 carefully confines that restriction to care furnished "under this section." Nothing in the VHCERA's text or history supports that result.

## II. Subsequent Actions by VA and Congress Confirm That Section 106 Does Not Constrain VA's Provision of Health Care Under 38 U.S.C. § 1710

For the 34 years that Section 106 has been on the books, VA and Congress have operated under a shared understanding of its limited role in the current provision of medical services. That understanding was reflected first in how VA constructed the Medical Benefits Package: it placed within the Package services that Section 106 expressly excludes. That understanding was reiterated in VA's repeated statements—to Congress in testimony, to the public, and in the Federal Register—that the provision of abortion care was governed by the Secretary's discretion rather than any statutory bar. Finally, that understanding was confirmed by how Congress has legislated since 1996, expanding the care available to women veterans through the post-VHCERA framework without once treating Section 106 as a constraint on the Secretary.

### A. VA Implemented the VHCERA With the Understanding That Section 106 Did Not Govern the Medical Benefits Package

VA's implementation of the VHCERA confirms that Section 106 does not govern services furnished through the Medical Benefits Package. Section 1710 of title 38 directs the Secretary to provide to veterans the hospital care and medical services he "determines to be needed." 38 U.S.C. § 1710(a)(1). The Secretary makes that determination by regulation, listing the categories of care VA provides. 38 C.F.R. § 17.38(a). A veteran then receives a listed service when a VA clinician

finds it "needed to promote, preserve, or restore the health of the individual." *Id.* § 17.38(b).

Section 106 does not constrain the Secretary's decision-making authority under 38 U.S.C. § 1710. When VA built the Medical Benefits Package in 1999, the Secretary had to decide, service by service, what 38 U.S.C. § 1710 authorized it to furnish. The Secretary considered pregnancy and delivery care and concluded that those services "should be included in the medical benefits package." 64 Fed. Reg. 54207, 54210 (Oct. 6, 1999). He also considered infertility services and determined that they "should not be excluded." *Id.* Both are services Section 106 excludes. In the same rulemaking, VA excluded abortion and abortion counseling by regulation. 38 C.F.R. § 17.38(c)(1) (1999).

An agency does not deliberate over whether to furnish a service that a statute forbids it to provide. Nor does it need to promulgate a regulation excluding a service a statute already excludes. *See* Congressional Research Service, *Health Care for Veterans: Answers to Frequently Asked Questions* (Feb. 25, 2014), https://digital.library.unt.edu/ark:/67531/metadc282277/m1/1/high_res_d/R42747_2014Feb25.pdf (describing abortion care and counseling as excluded "under current regulations").

### B. VA Has Repeatedly Reiterated That Section 106 Does Not Bear on the Medical Benefits Package

VA has consistently interpreted Section 106 as restricting only care provided under that section. On March 25, 2021, the Secretary testified before the House Committee on Veterans' Affairs—including *amicus* Representative Takano, then the Committee's Chair. When asked about the Department's provision of abortion care, he clarified that "under current regulations" as of 2021, the Department was prohibited from providing abortion care—but explained that the option to change that practice was "available" to the Department as a "regulatory matter." House Comm. on Veterans Affs., *Department of Veterans Affairs Oversight: Abortion Services*, C-SPAN (Mar. 25, 2021), https://www.c-span.org/video/?c5023557/user-clip-abortion-services. In other words, he explained that no statute stood in the way of the provision of abortion care. No committee member questioned that interpretation.

VA reiterated the same position in 2022. On June 24, 2022, *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), was decided. Within weeks, as states began enforcing abortion bans that reached veterans living within them, veterans were asking whether VA could provide abortion care. The Department's answer was that it was "not statutorily prohibited from providing abortion counseling or abortion services." Patricia Kime, *VA Considers Providing Abortions as It Monitors States' Responses to Supreme Court Ruling*, Military (July 21, 2022),

https://www.military.com/daily-news/2022/07/21/va-considers-providing-abortions-it-monitors-states-responses-supreme-court-ruling.html. On July 28, *amici* Senator Hirono and 24 colleagues wrote to Secretary McDonough, quoting and endorsing the Department's position that it was "not statutorily prohibited from providing abortion counseling or abortion services." Letter from Senator Mazie K. Hirono et al., to Denis McDonough, Sec'y, Dep't of Veterans Affairs (July 28, 2022), https://www.hirono.senate.gov/imo/media/doc/07.28.2022_MKH_Letter%20to%20VA%20re_%20Abortion_Final.pdf. This was the reading VA first articulated in 1993, implemented in the 1999 rulemaking associated with the Medical Benefits Package, and restated to Congress in the years since.

In September of 2022, VA said the same thing in the Federal Register. It explained that the enumerated exclusions in Section 106 "limited only the services provided 'under this section,'" so that while Section 106 "barred the provision of any abortion or infertility service under section 106 of the VHCA, it did not limit VA's authority to provide such services under any other statutory provision such as 38 U.S.C. 1710." 87 Fed. Reg. 55287, 55288-89 (Sept. 9, 2022); *see also* 89 Fed. Reg. 15451, 15455-56 (Mar. 4, 2024).

### C. Congress Has Continued to Legislate Within the Medical Benefits Package Framework, Not Section 106

Congress continued to legislate within the comprehensive Medical Benefits Package framework when it enacted the Deborah Sampson Act of 2020. In the Act, Congress defined the health care it was addressing as the services "included in the medical benefits package provided by the Department" on the date of enactment. Pub. L. No. 116-315, § 5101(b)(2), 134 Stat. 4932, 5064 (2021). On that date, the Package included a range of reproductive and maternity care, including types of care Section 106 excludes. The Act called on VA to improve women veterans' access to VA health care through a series of measures addressing primary care, clinician training, counseling, medical care for newborns, staffing, and support services. Pub. L. No. 116-315, §§ 5001-5503. The Act also directed the Secretary to study VA's provision of infertility services and to develop "recommendations for the improvement of infertility services under the laws administered by the secretary." *Id.* § 5110(b)(4). In doing so, Congress did not repeal Section 106's exclusion of the provision of infertility services, because no repeal was necessary. Congress was legislating under 38 U.S.C. § 1710, and Section 106 does not reach that provision. Congress never questioned that interpretation, which VA had been implementing for decades.

The Deborah Sampson Act was not an outlier. Congress has legislated on women veterans' reproductive and maternity care repeatedly since 1996, always

through Chapter 17 and never through Section 106, and never calling into question VA's interpretation of Section 106. Congress authorized the Department to furnish fertility counseling and treatment using assisted reproductive technology. Pub. L. No. 114-223, § 260, 130 Stat. 857, 897 (2016). It established maternity care coordination programs. Pub. L. No. 117-69, 135 Stat. 1495 (2021). It authorized care for newborn children of veterans receiving maternity care from the Department. 38 U.S.C. § 1786. Congress legislated all of this against a framework in which the Department furnished pregnancy, delivery, and infertility services under 38 U.S.C. § 1710—services explicitly excluded under Section 106. It took the existence of VA-provided prenatal and delivery care as a given and reported that "[w]omen veterans often experience complicated pregnancies and births, and therefore this section ensures that they will be covered should an emergency arise." H.R. Rep. No. 116-281, at 22 (2019) (submitted by *amicus* Representative Takano). And Congress took no action to repudiate VA's understanding that Section 106 posed no limit to the provision of care under 38 U.S.C. § 1710.

## III. SECTION 106 DOES NOT ADDRESS OR LIMIT ABORTION COUNSELING

VA's reliance on Section 106 fails for an additional reason as to abortion counseling. Section 106 identifies infertility services, abortions, and pregnancy care as services that may not be furnished "under this section." It does not mention abortion counseling. The Final Rule therefore rests, as to counseling, on nothing but

the assertion that "the Secretary has determined that abortion counseling is not needed or medically necessary and appropriate." 90 Fed. Reg. at 61323. Whatever the reach of Section 106's express restrictions, VA cannot derive from them a prohibition Congress did not include.

## CONCLUSION

The 2025 Final Rule rests on a statutory prohibition that Congress did not enact. Section 106 limits only care furnished under Section 106; it does not restrict the Secretary's separate authority under 38 U.S.C. § 1710 and the VHCERA. That conclusion is confirmed by the plain language of the statute, the comprehensive structure Congress adopted in 1996, the legislative history explaining that reform, VA's consistent implementation of that framework, and later action by Congress ratifying VA's interpretation. The Court should therefore reject VA's reliance on Section 106 and grant the relief requested by Petitioner.

Respectfully submitted,

/s/ Brian M. Boynton

BRIAN M. BOYNTON
KELSEY MOVSOWITZ
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

*Attorneys for Amici Curiae Members of Congress*

EMMA ELLMAN-GOLAN
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

November 6, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 3,993 words.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Brian M. Boynton
BRIAN M. BOYNTON
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

November 6, 2026